IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Valerie Jean Nadon, | ) | Civil Action No. 8:14-cv-03420-RBH-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE**) |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability and disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On August 18, 2011, Plaintiff filed an application for DIB alleging disability beginning April 23, 2009. [R. 184–192.] The claim was denied initially and upon reconsideration by

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

the Social Security Administration ("the Administration"). [R. 55–70, 92–95.] Plaintiff requested a hearing before an administrative law judge ("ALJ") and on April 30, 2013, ALJ Richard L. Vogel conducted a video hearing on Plaintiff's claim. [R. 27–39.

The ALJ issued a decision on May 22, 2013, finding Plaintiff not disabled. [R. 11–20.] At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through June 30, 2014, and had not engaged in substantial gainful activity since April 23, 2009, the alleged onset date. [R. 13, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: status post right shoulder surgery and left foot surgeries. [3] [R. 13, Finding 3.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 14, Finding 4.] The ALJ specifically considered Listings 1.02A and 1.02B. [R. 14–15.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). [R. 15, Finding 5.] At Step 4, the ALJ noted Plaintiff was capable of performing her past relevant work as a secretary.

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[3]The ALJ also found Plaintiff had a non-severe, medically determinable mental impairment of anxiety. [R. 13, Finding 3.] The ALJ later noted that Plaintiff testified to having degenerative disc disease in her neck and back, making her unable to turn her neck [R. 15]; the ALJ does not, however, address any limitations resulting from this impairment at either steps 2 or 3. On remand, the ALJ should address his consideration of Plaintiff's degenerative disc disease and its impact, if any, on her RFC.

[R. 19, Finding 6.] On this basis, the ALJ found Plaintiff had not been under a disability as defined by the Act from April 23, 2009, through the date of the decision, and she was not entitled to DIB. [R. 19, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision and the Council declined review. [R. 1–5. ] Plaintiff filed this action for judicial review on August 22, 2014. [Doc. 1.]

**THE PARTIES' POSITIONS**

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:

1. the ALJ improperly evaluated the opinion evidence of record ignoring limitations imposed by Plaintiff's treating physicians and/or ignoring their opinions regarding her suitability to return to work, and failure to address other opinions of record; [Doc. 15 at 9–12];

2. the ALJ failed to explain his step four findings by failing to document the demands of Plaintiff's past work and reconciling the proposed limitations with those demands [*id*. at 12–14];

3. the ALJ's credibility analysis is not supported by substantial evidence [*id*. at 14–17]; and,

4. the ALJ failed to evaluate the combined effect of Plaintiff's impairments [*id*. at 17–18].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that

1. the ALJ properly considered the medical evidence before him and did not ignore evidence that was not before him but later submitted to the Appeals Council who denied review [Doc. 16 at 9–15];

2. the ALJ's Step Four findings are supported by substantial evidence [*id*. at 15–17];

3. the ALJ properly considered and evaluated Plaintiff's credibility [*id*. at 17–21]; and,

4. the ALJ clearly considered the combined effect of Plaintiff's impairments [*id*. at 21–22].

**STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result

as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence

or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

> and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

**I. The Five Step Evaluation**

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the

claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

**A. *Substantial Gainful Activity***

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

**B. *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical

and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C. *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D. *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65

F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

**E. *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III. Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

**IV. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations,

however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

**V. Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

**VI. Credibility**

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Weighing of Opinion Evidence**

Plaintiff argues the ALJ "ignor[ed] not one, but several medical opinions of physicians and vocational experts in reaching medical conclusions that were completely unsupported by any medical authority and which he was utterly unqualified to make." [Doc. 15 at 10.] Specifically, Plaintiff argues the ALJ "completely ignore[d] the limitations imposed by [Plaintiff's] treating physician," Dr. James O. Merritt, IV ("Dr. Merritt), of Strand Orthopaedic Consultants, that Plaintiff could "work no more than six hours a day and without any lifting over five pounds and with no overhead reaching"; and, ignored Dr. James DeMarco's ("Dr. DeMarco") opinion that Plaintiff "would not be able to type or do keyboarding over a protracted period of time." [*Id*.] The Commissioner argues that substantial evidence supports the ALJ's decision "not to adopt the restrictions in Dr. Merritt's note from April 7, 2010, and the Appeals Council did not err in denying Plaintiff's request for review in light of this evidence." [Doc. 16 at 11.] The Court agrees the ALJ improperly weighed the opinion evidence.

In considering medical source opinions, such as treating physician opinions, the ALJ is obligated to evaluate and weigh these medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a

treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved

> to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain RFC).

***Medical History***

Plaintiff alleges disability because she has a tear in her right rotator cuff; she has had her right rotator cuff repaired three times; she has had her left rotator cuff repaired twice; she has had three surgeries on her left ankle and a total reconstruction; she has arthritis in her neck, left foot, and right shoulder; and she suffers from anxiety attacks. [R. 205.] Plaintiff also alleges that she has developed degenerative disk disease between C4 and C5. [R. 242.]

On December 7, 2007, Plaintiff presented to Dr. Ross Taylor ("Dr. Taylor") of Carolina Bone and Joint with complaints of pain in the left ankle, hindfoot, midfoot, and forefoot. [R. 295.] Plaintiff had previously undergone left tarsal tunnel release and hammertoe repair of the left forefoot on November 24, 2004. [*Id.*] Upon evaluation, Dr. Taylor recommended proceeding with an EMG nerve conduction study and velocity study of the bilateral lower extremities to rule out return of tarsal tunnel syndrome. [R. 297.] On February 8, 2008, Plaintiff underwent left ankle and foot reconstruction surgery by Dr.

Taylor due to symptoms consistent with symptomatic cavovarus foot deformity and incompetence of the peroneus brevis tendons. [R. 298.]

On September 3, 2008, Plaintiff returned to Dr. Taylor status after her left foot reconstruction. [R. 294.] Plaintiff had full range of motion and complete stability of the bilateral ankle, right hindfoot, midfoot, and bilateral forefoot joints, with normal muscle tone and strength; however, there was an overlap of the left fourth toe and cock-up secondary to contracted scar seen at the left fourth. [*Id.*] On September 30, 2008, Plaintiff underwent surgery on her left foot due to her left fourth toe cock-up deformity. [R. 290.]

On February 25, 2009, Plaintiff presented to Dr. Merritt for an evaluation of her right shoulder which she had injured at work three week prior. [R. 610.] An MRI revealed some signal within the tendon probably consistent with tendinopathy but no obvious full-thickness tear. [*Id.*] Dr. Merritt assessed Plaintiff with rotator cuff strain tendinitis, possible tear. [*Id.*] Dr. Merritt treated Plaintiff with an injection. [*Id.*] Dr. Merritt limited Plaintiff to lifting no more than five pounds and noted that, if she did not get better, he would recommend arthroscopy with subacromial decompression for the evaluation of the cuff with repair a needed. [*Id.*]

On March 25, 2009, Plaintiff saw Dr. Merritt on follow up for her shoulder because she was still having impingement type symptoms and pain over the lateral shoulder with some parascapular muscle. [R. 609.] Dr. Merritt assessed rotator cuff impingement strain with partial thickness tear and possible full thickness tear. [*Id.*] Dr. Merritt scheduled Plaintiff for an arthroscopy with subacromial decompression, noting that she had a previous rotator cuff surgery about 15 years prior. [*Id.*] Dr. Merritt limited Plaintiff to light work with

no heavy lifting with the right arm. [*Id.*] On April 24, 2009, Plaintiff underwent surgery for her right shoulder rotator cuff impingement and tear. [R. 320, 606.] On April 27, 2009, Dr. Merritt noted Plaintiff's repair was doing well and that she should continue with pendulum exercises. [R. 605.]

Plaintiff returned to Dr. Merritt on July 15, 2009, with increased pain in her shoulder and some lingering limitations in overhead activity. [R. 602.] Dr. Merritt assessed possible development of adhesive capsulitis or scar tissue, and he prescribed pain medication and advised her to work on stretching. [*Id*.] Plaintiff returned to Dr. Merritt on August 19, 2009, with continued discomfort in her shoulder after having worked hard with therapy. [R. 601.] Dr. Merritt decided to get an MRI and to "go back in" for manipulation under arthroscopy with lysis of adhesions to help regain her motion. [*Id*.] Plaintiff underwent an MRI on August 27, 2009, which showed a complete full thickness re-tearing involving the distal most anterior supraspinatus tendon and possibly the infraspinatus tendon. [R. 600.]

On August 31, 2009, Plaintiff presented to Dr. Merritt on follow up after the MRI. [R. 352, 599.] Plaintiff relayed she was still having a lot of pain and problems with overhead activity and, on exam, she had limited forward flexion and abduction although her wound looked good. [*Id*.] Dr. Merritt concluded that the re-tearing of the rotator cuff shown on the MRI most likely occurred during physical therapy. [*Id*.] On October 13, 2009, Dr. Merritt performed surgery to repair Plaintiff's right shoulder rotator cuff tear. [R. 348, 596.] Dr. Merritt noted that the cuff tissue was a little thin but overall the quality was good, and he felt the repair was adequate and would hold. [R. 349, 597.] On December 28, 2009, Dr. Merritt noted Plaintiff was doing well, that she should continue to stay out of work until he

saw her again, and that he would start her back on light duty with gradually increasing activity after three months. [R. 592.] On January 25, 2010, however, Dr. Merritt noted Plaintiff was making "slow progress" and was still having problems with overhead activity and weakness. [R. 591.] Dr. Merritt determined to try another four weeks of therapy but indicated he would like to get her back to light duty at some point. [R. 591.]

On February 22, 2010, Plaintiff again saw Dr. Merritt on follow up. [R. 590.] Dr. Merritt indicated Plaintiff was progressing slowly but improving, although she was still having pain with stressing. [*Id.*] Dr. Merritt saw Plaintiff again on April 7, 2010, and noted that she was having problems with her shoulder and her pain level was not improving. [R. 589.] Dr. Merritt advised Plaintiff that he was concerned she was having significant limitations with her motion and strength and continued pain; he was also concerned about re-tearing. [*Id.*] Dr. Merritt limited Plaintiff to light duty work with no lifting over five pounds and no overhead activity, and "limited it to six hours a day." [*Id.*]

On June 11, 2010, Plaintiff presented to Dr. C. Curtis Elliott ("Dr. Elliott") for an independent exam at the request of her medical case manager. [R. 854.] After a thorough discussion of Plaintiff's medical history and injury [R. 854–856], Dr. Elliott conducted a physical examination and found that Plaintiff:

> has some general neck pain at the limits of cervical flexion and extension, side to side bending and rotation . . . . She can perform 95 degrees of active forward flexion right shoulder compared to 155 degrees left shoulder; she has a lot of pain when performing active forward flexion at the right shoulder; her passive forward flexion of the right shoulder is up to 120 degrees but she has significant pain at the limits of motion; she does have some infraspinatus and superspinatus atrophy on the right compared to the left.

[R. 857.] Dr. Elliott concluded that Plaintiff's exam demonstrated significant loss of passive range of motion with significant pain at the limits of passive motion. [R. 858.] Dr. Elliott thought the major component of Plaintiff's problem was adhesive capsulitis, and he concluded that it would be very difficult for Plaintiff's active range of motion to increase if her passive range of motion remained poor. [*Id.*] Dr. Elliott surmised that Plaintiff could perform some work with light duty modification, including limiting the use of her right hand to the area between her waist and shoulder level, and lifting 5–10 pounds with her right upper extremity. [R. 860.]

Plaintiff presented to Dr. DeMarco, of Palmetto Orthopaedics, on September 22, 2010 for consultation for her shoulder pain and two failed rotator cuff repairs. [R. 617.] Plaintiff indicated her pain was about 7 out of 10 and worsened when she lifted her arm or typed. [*Id.*] Plaintiff also complained of neck pain and some numbness and tingling down into her arm. [*Id.*] After examination, Dr. DeMarco told Plaintiff she had week rotator cuff tissue, complicated by significant weakness and stiffness in the shoulder. [R. 618.] Dr. DeMarco advised that he would treat her with injections and therapy, a Medrol dose pack, or manipulation. [*Id.*] If after three months she had not maintained motion and the pain had not resolved, arthroscopic rotator cuff repair would be recommended. [R. 619.] Dr. DeMarco specifically indicated he did not want to violate the deltoid once again as Plaintiff may have had some axillary neuropraxia from previous deltoid incisions and weakness to the anterior portion of the deltoid. [*Id.*]

On October 13, 2010, Dr. DeMarco saw Plaintiff on follow up after MUA and injections on October 7, 2013. [R. 616.] Plaintiff was feeling significantly better, had

decreased pain, and could get her arm above her head. [*Id.*] Dr. DeMarco noted that Plaintiff was neurologically and vascularly intact; skin and lymphatics normal; and deep tendon reflexes equal bilaterally. [*Id.*] Dr. DeMarco also noted that he did not think Plaintiff would ever be able to get back to full duty without restrictions, Plaintiff would have some permanent restrictions with overhead lifting, and her maximum medical improvement ("MMI") would likely be 8–12 weeks after manipulation and therapy. [*Id.*]

Plaintiff returned to Dr. DeMarco on November 12, 2010, and while she continued to do well, she still had some stiffness, pain, and discomfort in her shoulder if she moved too quickly. [R. 615.] Dr. DeMarco noted that Plaintiff would continue therapy and that she would need re-training to some other form of employment. [*Id.*] Dr. DeMarco's treatment notes from January 5, 2011 indicated that Plaintiff was finishing her therapy but still had some weakness and discomfort in her shoulder, although her motion had improved. [R. 614.] Dr. DeMarco found Plaintiff was at MMI with permanent partial impairment to the right shoulder of 23 percent. [*Id.*] Dr. DeMarco noted that Plaintiff would need an functional capacity evaluation ("FCE") to define her permanent restrictions and that she may require additional injections and /or repeat physical therapy in the foreseeable future if she regressed. [*Id.*]

Dr. DeMarco reviewed Plaintiffs FCE performed on February 1, 2011, and concluded she was qualified to do a sedentary physical demand level job. [R. 613, 839–852.] Dr. DeMarco noted that Plaintiff met the job demand of clerical and secretary work for her former employer except for constant forearm rotation on the right, which was limited by shoulder pain. [*Id.*] Dr. DeMarco noted Plaintiff could lift 10 pounds floor-to-

waist and waist-to-shoulder with her left upper extremity, and she could lift five pounds with her right upper extremity with some discomfort. [*Id.*] On March 4, 2011, Plaintiff returned to Dr. DeMarco still feeling pain and discomfort which she felt flared up with her FCE. [R. 612.] Dr. DeMarco clarified Plaintiff's FCE and noted that she was at the sedentary physical demand level and would not be able to constantly type or keyboard but could type or keyboard intermittently. [*Id.*]

On October 28, 2011, Dr. Joyce Broadus Lewis ("Dr. Lewis") conducted an examination at the request of a disability examiner. [R. 751.] Dr. Lewis obtained two views of Plaintiff's left ankle and noted that the bones were in good alignment with fusions. [*Id.*] Dr. Lewis also reviewed AP and lateral views of the cervical spine which showed diminished disc height at C4-5 and, to a lesser extent, at C5-6 with some minimal spurring noted. [*Id.*] Dr. Lewis concluded that Plaintiff had some degenerative disc disease and spurring which was not unusual at her age. [*Id.*] AP and lateral views of the lumbar spine reviewed by Dr. Lewis showed very mild scoliosis convex left that may be positional and may be related to a pelvic tilt. [*Id.*] Disc spaces were slightly diminished at L3–4 and L4–5 with some spurring seen at L3, L4, and L5. [*Id.*]

On December 9, 2011, Dr. Cindy S. Wright, D.O. ("Dr. Wright") conducted a Comprehensive Orthopedic Examination on Plaintiff at the request of a disability examiner at the South Carolina Vocational Rehabilitation Department. [R. 753.] On physical examination, Dr. Wright noted that Plaintiff could drive and cook; could dress, bathe, and feed herself; had no edenopathy, bruits, or JVD in her neck; had no clubbing, cyanosis, or edema in her extremities; and her range of motion was normal in her cervical spine, lumbar

spine, elbows, writs, knees, and hips. [R. 754.] Dr. Wright also noted that Plaintiff's shoulder had 150 degrees of abduction on the left and 90 degrees on the right, abduction was normal at 30 degrees bilaterally, forward flexion was normal on the left and 90 degrees on the right, and internal and external rotation was normal. [R. 755.] Dr. Wright noted that Plaintiff could tandem walk but was a little off balance, toe and heel walk with some pain in her left ankle with heel walking, do a full squat, had no gait disturbances, did not use an assistive device, and her fine dexterity movements of the fingers and rapid alternating motions of the hands were intact. [*Id*.]

***Evidence Presented to Appeals Council and Entered into Record***

Plaintiff underwent a Vocational Assessment on July 14, 2011 performed by David R. Price, M.Ed. ("Price") a certified rehabilitation counselor, for an opinion on Plaintiff's employability. [R. 862.][7] Price stated he interviewed Plaintiff, administered standardized testing for measurement of intelligence and academic levels, and reviewed her medical records. [*Id.*] Based on the available information and with a reasonable degree of vocational certainty, Price provided the following conclusions representing his professional opinion as a certified vocational rehabilitation counselor:

> Valerie Nadon is a 63 year old secretary. She tore her rotator cuff in a work related accident on 02/02/2009. She underwent initial surgical repair and subacromial decompression. A second surgery was required for revision of the rotator cuff tear. Ms. Nadon developed adhesive capsulitis and required a third procedure for closed manipulation. At the present time she has a third recurrent tear. Tendon and muscle tissue are so thin and frayed another surgery is not recommended. Ms.

[7]As the Commissioner points out, Price's report was provided to the Appeals Council and was not before the ALJ at the time of his decision. [Doc. 16 at 9, FN 3.]

Nadon has been placed at MMI and assigned 23% impairment of the right dominant shoulder. She is permanently restricted to 5 lb weights and sedentary activity. She has no capacity for overhead use, repetitive use, and very little capacity for fine motor use. Grip and grasp are significantly compromised. The entire right arm is exquisitely painful. Numbness is present in the right hand. Simple tasks such as eating or writing elicit severe pain. Help is required for most activities of daily use. Nearly all tasks have been shifted to the left arm. Ms. Nadon is right side dominant. Consequently using the left arm is slow and awkward. Ms. Nadon continues to require narcotic medication for pain control.

As a result of constant pain and loss of lifestyle Ms. Nadon has become depressed. She experiences sadness, social withdrawal, irritability, and bad several crying spells each week. She is taking antidepressant medication.

Ms. Nadon sustained a severe work-related injury that resulted in two failed surgical procedures and a closed manipulation secondary to rotator cuff tear. As a result, Ms. Nadon has an exquisitely painful and dysfunctional right arm. For the purposes of employment the arm is useless. Ms. Nadon cannot return to work as a secretary or at any of her previously performed occupations.

Ms. Nadon is unable to sit comfortably. She cannot walk without causing pain to her arm. Any use may initiate a prolonged pain flare. Her entire life has been disrupted by the presence of severe pain. As regards to future employment it is quite obvious to me that Ms. Nadon is not going to be able to return to the workforce. Her pain will not allow her to endure the physical stresses required for daily gainful employment. The skills she uses to earn her living are no longer viable and she cannot perform them. When she takes medication to control her pain she is sedated and impaired cognitively to the point that she cannot function. At 63 years of age she is not considered a desirable employee. In the workplace Ms. Nadon would not be able to meet attendance nor productivity expectations. With her physical disability, lack of marketable skills, and advanced age she cannot compete in the open labor market. Her history of worker's compensation claim will not be well received by prospective employers. She is likely to be viewed as accident prone. I find it very unlikely she would

> be offered a job. If she were, I do not believe she would be able to hold it over the long term. From the perspectives of employability, placeability, and sustainability Ms. Nadon has a very poor profile.
>
> Therefore, based on the available information and with a reasonable degree of vocational certainty, it is my opinion that the work-related injury of 02/02/2009 had rendered her completely unfit for employment. I believe her disability is total and complete. Ms. Nadon's medical condition is unlikely to change. Therefore, I consider her disability to be permanent. She is not a candidate for vocational rehabilitation. I recommend that she contact the social security administration and apply for total disability status. I am confident she will meet the criteria.

[R. 866–867.]

***ALJ's Weighing of Medical Evidence***

The ALJ discussed the medical evidence of record from Dr. Taylor, Dr. Merritt, Dr. Curtis, Dr. DeMarco, Dr. Wright, and Dr. Bornfreund and concluded that Plaintiff's medical records did not reveal that her severe impairments are disabling. [R. 16–18.] With respect to the weight assigned to the various opinions, the ALJ determined:

> Significant weight is accorded to the above stated opinions of the claimant's treating physician, Dr. James R. Demarco, as a functional capacity assessment, treatment notes, and the medical evidence as a whole support his opinions. (Exhibit 7F) Significant weigh is accorded to the above stated opinion of the claimant's primary care physician Dr. Jonathan Bornfreund, as it supports a finding that the claimant's anxiety is not severe. (Exhibit 14F)
>
> Significant weight is given to the opinions of the State Agency medical consultants who performed physical and mental residual functional capacity assessments of the claimant, as their opinions that the claimant is limited to sedentary work is consistent with the above stated residual functional capacity, the medical evidence as a whole, and a finding of not disabled. (Exhibit 1A and Exhibit 4A).

[R. 19.]

***Discussion***

Upon review the Court concludes that the ALJ's decision fails to adequately explain his consideration of and weight assigned to certain findings and opinions of Plaintiff's treating physicians and fails to give "good reasons" in the written decision for the weight given (or not assigned) to other treating source's opinions. *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996). For instance, Dr. DeMarco, a shoulder specialist, specifically opined that Plaintiff would have some permanent restrictions with overhead lifting [R. 616], and would be limited to lifting five pounds with her right upper extremity with some discomfort [R. 613]. While the ALJ states that Dr. DeMarco's opinion was accorded significant weight, there is not indication in the ALJ's discussion regarding why specific limitations with respect to Plaintiff's use of her right arm were excluded from Plaintiff's RFC.[8]

Regulation SSR 83-10 defines sedentary work as

> involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

---

[8]Curiously, the ALJ mentions during the hearing "Okay, so no overhead reaching with the right hand?", to which Plaintiff responded "No". [R. 32.] Yet, no limitations regarding overhead reaching were included in Plaintiff' RFC and there is no reasoning in the decision as to why this limitation was excluded.

Dr. DeMarco, whose opinion the ALJ gave significant weight, specifically found Plaintiff was limited to intermittent keyboarding. [R. 612.] This limitation is not consistent with the definition of sedentary work in the regulations, and the ALJ failed to explain his consideration of the same. Additionally, the ALJ failed to explain why there is no indication of weight assigned to the findings of Dr. Merritt who limited Plaintiff to lifting no more than five pounds overhead and limited her to six hours of work each day. [*See* R. 589.] The ALJ's failure to assign weight to the opinion of Plaintiff's treating physician Dr. Merritt directly contradicts the agency's expressly stated approach to weighing the opinions of treating physicians. *See* SSR 96-2p ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527.").

Further, the ALJ states that significant weight was given to the "physical and mental residual functional capacity" assessments of the Plaintiff conducted by state agency medical consultant; however, the Court is unable to determine which opinions the ALJ is referring to by reviewing the record. The medical evidence contains opinions from independent state medical examiners Dr. Elliott (who concluded Plaintiff has limited use of her right hand to the area between her waist and shoulder and could lift 5–10 pounds [R. 860]); and Dr. Wright (who concluded Plaintiff showed limited range of motion in her right arm [R. 755]), but there no discussion in the ALJ's decision regarding how these opinions were weighed in light of their direct contradiction to his implied conclusion that Plaintiff has no limitations associated with the use of her right arm. *See* R. 19 (". . . the above [RFC] assessment for the full range of sedentary work is supported by the medical evidence of record.")

The Commissioner also challenges Plaintiff's discussion of evidence provided by to the Appeals Council from Price with respect to Plaintiff's employability arguing that it is not material evidence. [Doc. 16 at 11.] The Commissioner argues that Price's opinion "drew extreme and unsupported conclusions that directly conflicted with other, more reliable evidence." [*Id.* at 12.] The Court observes that the Appeals Council listed the new evidence and stated that it considered the evidence [R. 2], but found the material was not new and, therefore, provided no discussion of its consideration of the new evidence, thereby rendering a meaningful review by this Court difficult. *See Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011). Price's opinion, however, is consistent with Plaintiff's testimony and the opinions provided by Plaintiff's treating physicians. [*See* R. 866 (Mr. Price states "[s]he is permanently restricted to 5 lb weights and sedentary activity. She has no capacity for overhead use, repetitive use, and very little capacity for fine motor use. Grip and grasp are significantly compromised. The entire right arm is exquisitely painful.").] As the Fourth Circuit Court of Appeals explained in *Meyer*, this situation can present some difficulty for reviewing courts. To be sure, there are cases—"one-sided" cases in which the record provides an adequate explanation of the Commissioner's decision—where a reviewing court can determine whether substantial evidence supports the Commissioner's decision. 662 F.3d, at 707. However, where "other record evidence credited by the ALJ conflicts with the new evidence," a reviewing court "simply cannot determine whether substantial evidence supports the ALJ's" decision. *Id.* That is the case here. Thus, there is a need to remand the matter to the administrative agency so that a fact finder can "reconcile that [new] evidence with the conflicting and supporting evidence in the record."

*Id*. After all, "[a]ssessing the probative value of the competing evidence is quintessentially the role of the fact finder." *Id*.

The ALJ failed to follow well-established procedures in considering and weighing the medical opinions of record. At a minimum, the ALJ is required to explain the weight assigned to the opinions and findings of Plaintiff's treating physicians and other medical opinions of record. Therefore, remand is necessary.

**Remaining Allegations of Error**

Because the Court finds the ALJ's failure to adequately consider the medical evidence of record is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

December 3, 2015
Greenville, South Carolina